FILED
U.S. DISTRICT COURT
_____ DIV.

2009 JUL 31 AM 8:57

CLERK _L. Ilbrden_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| BURNETTA DOPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 108-117 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Burnetta Dopson ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") payments under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

### I. BACKGROUND

Based on claims of disability dating back to August 13, 2003, Plaintiff filed for SSI on July 22, 2004. Tr. ("R."), pp. 12, 55. Her application was denied initially and upon reconsideration. R. 24-26, 29-32. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 19, 2008. R. 33-34, 412-45.

At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and a Vocational Expert ("VE"). R. 413. On April 18, 2008, the ALJ issued an unfavorable decision. R. 12-21. Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity at any time relevant to this decision.

2. The claimant has the following severe impairments: obesity and mechanical back pain. (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant has the residual functional capacity ("RFC") to perform light work,[1] with occasional bending, stooping, and crouching. The claimant also needs a sit-stand option such that she is not required to be on her feet walking or standing for more than 30 minutes at a time. Mentally, the claimant has the ability to perform simple work that does not require focused attention to detailed tasks. However, the claimant is unable to perform any past relevant work. (20 C.F.R. § 416.965).

5. Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in

---

[1]Light work involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

2

the national economy that Plaintiff can perform.² (20 C.F.R. §§ 416.960(c) and 416.966). Accordingly, the claimant has not been under disability at any time through the date of this decision.

R. 14-20. When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). Having failed to convince the AC to review her case, Plaintiff filed the current civil action in the United States District Court for the Southern District of Georgia, requesting a reversal or remand of the adverse decision. Plaintiff argues in this case that the ALJ erred by (1) discrediting her testimony, (2) failing to find that her impairments or combination of impairments did not meet or medically equal one of the listed impairments, (3) failing to order an additional consultative psychological examination, (4) presenting incorrect information in the hypothetical to the VE, (5) failing to consider the side effects of her medications on her ability to work, (6) assuming facts not stated by her treating physician and presenting those assumed facts to the VE, and (7) refusing to allow her son to testify at the hearing.³ (See generally doc. no. 16) (hereinafter "Pl.'s Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145

---

²At the hearing, the VE testified that these jobs would include work as a cashier, information clerk, or surveillance system monitor. R. 438.

³Though Plaintiff presents nine issues for review in her brief, several of them essentially challenge the ALJ's findings as to Plaintiff's credibility and are grouped together for purposes of detailing the issues raised and the Court's discussion below.

3

(11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal

4

conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

As noted above, Plaintiff presents various arguments in support of her position that the Commissioner's decision should be reversed. However, several of those arguments center on whether the ALJ properly discounted Plaintiff's subjective complaints of pain and other disabling symptoms, including the side effects of Plaintiff's medications, and the Court accordingly addresses these issues together here.

The Eleventh Circuit has established a three-pronged test for evaluating a claimant's complaints of pain and other subjective symptoms. See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

5

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*). As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted).

Plaintiff complained to her doctors in January 2007 that her medications caused her to be tired "all day long" and that she was "unable to function." R. 237. She also testified at the hearing that her medications cause her to be drowsy and sleepy all day long. R. 416-17, 427. Indeed, as detailed below, Plaintiff and the ALJ had a prolonged discussion about her drowsiness and weakness at the hearing when the ALJ observed that Plaintiff appeared to be too weak to raise her right arm to take her oath. R. 416-18. As to her complaints of pain, Plaintiff maintained at the hearing that she can only stand for a minute or two at a time and that her shoulders, knees, and lower back cause her pain on a daily basis. R. 424, 434-35. She also testified that she is in pain when she sits and that she is unable to lift anything weighing more than five pounds. R. 424-25. Because she sleeps all day and is in constant pain, her older children do all the chores around the house and take care of their four-year-old

6

brother. R. 426. Plaintiff testified that she does attend church, but it takes an hour for her to get dressed and other church members drive her there. R. 427, 435. According to Plaintiff, her oldest daughter takes her to the grocery store and to pay her bills. R. 427.

In his opinion, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce some [of the] symptoms" she was experiencing, but her "statements concerning the intensity, duration, and limiting effects of her symptoms are not entirely credible." R. 18. In discrediting Plaintiff's testimony regarding the extent and intensity of her pain, the ALJ noted that although Plaintiff had alleged that her lower back pain had moved to her left leg, this was inconsistent with the medical record. R. 18. Specifically, the ALJ discussed the fact that imaging studies revealed no acute changes in Plaintiff's condition and that there was no evidence of "nerve root or spinal cord compromise." Id. Indeed, while Plaintiff's first MRI performed in June 2004 revealed L5-S1 disc space narrowing and minimal degenerative changes in the lumbar region, R. 162, subsequent MRIs revealed the same condition, with no herniated disks or other significant changes or abnormalities. R. 237, 272, 283, 285.

The ALJ also explained that he was discrediting Plaintiff's testimony regarding the extent and intensity of her pain because her repeated physical examinations remained "essentially unremarkable with pain on palpation and extreme range of motion being the only constants." R. 18. However, a review of Plaintiff's medical records from 2005 to 2007 reveals that this was not the case. Specifically, in August 2005, Plaintiff's physical examination revealed that she was experiencing "pain over the lumbosacral area with muscle spasm" that caused her to have difficulty with backward and forward movements. R. 258.

7

In October and December 2005, Plaintiff continued to experience pain upon "palpation over the lumbosacral area and muscular area." R. 249, 251. In January 2007, Plaintiff reported that her pain was getting worse, and she reported feeling "pins and needles on sensation exam of the left lower extremity up to the midcalf." R. 238. During the same examination, Plaintiff was "tender to palpation" on both her spine and her hips. Id. In July 2007, when she reported low back pain "radiating posteriorly down to her thighs and stopping at her knees," a physical examination of her spine revealed "bilateral tenderness to palpation" with "reproducible pain with facet loading bilaterally." R. 387-88. Finally, in September 2007, the physician who examined Plaintiff noted that she was experiencing "paraspinal tenderness start[ing] at approximately L2 down to the sacral region," with "some limited flexion at the hips secondary to pain." R. 391. Thus, Plaintiff's medical records do not demonstrate that Plaintiff continued to have an extreme range of motion, as she was having difficulty with forward and backward movements in August 2005 and had "limited flexion" in her hips at her appointment in September 2007. Moreover, the ALJ's description of the medical evidence ignores the fact that Plaintiff reported in 2007 that her pain had begun to worsen and that the "pain on palpation" began to extend beyond her back at that time.

The ALJ also rejected Plaintiff's complaints to her doctors in January 2007 and her testimony at the hearing that her medications were causing her to be drowsy and sleepy all day, to the point where she was unable to function. In discrediting these complaints, the ALJ stated that "[s]uch decline in the claimant's abilities are not supported by any clinical evidence, in that claimant's physical examinations have not changed." R. 19. The ALJ also relied on a November 2004 consultative examination report from Edwin Sperr, Ph.D., in

discrediting Plaintiff's complaints about the side effects of her medications. Id. In his report, Dr. Sperr noted that Plaintiff reported waking up at 5:00 a.m. to take care of her youngest child and perform household chores. R. 19, 167. In particular, Plaintiff reported at that time that she swept daily, mopped every other day, cooked regularly, and did the laundry weekly. R. 19, 167. The ALJ also noted that Plaintiff reported to Dr. Sperr that she visited a girlfriend on a daily basis and attended church every Sunday. R. 19, 168.

Of course, these activities directly contradict Plaintiff's complaints in January 2007 and her testimony at the hearing that her medications make her drowsy and tired all day long. However, Dr. Sperr made his report in 2004, well before Plaintiff began complaining in 2007 about the disabling effects of her medications. Moreover, the medical records referenced by the ALJ in support of his conclusion that the decline in Plaintiff's abilities was not supported by clinical evidence pre-date by at least two years Plaintiff's complaints in 2007 that her medications were causing drowsiness and a decline in functioning. R. 160, 257. As noted above, while "[c]redibility determinations are, of course, for the [Commissioner], not the courts," Ryan, 762 F.2d at 942, when discrediting a claimant's subjective allegations of disabling symptoms, the law requires that the ALJ must articulate "explicit and adequate" reasons for doing so, Foote, 67 F.3d at 1561-62. Here, the ALJ's credibility findings are insufficient to enable this Court to conclude that he considered Plaintiff's "medical condition as a whole," Dyer, 395 F.3d at 1210-11 (citation omitted), as he mischaracterizes the nature of Plaintiff's physical examinations in discrediting her complaints of pain and relies on outdated reports and medical records in discrediting her complaints regarding the side effects of her medications. In sum, the Court finds that the ALJ failed to articulate adequate reasons

9

for discrediting Plaintiff's complaints of disabling pain and the side effects of her medications.[4]

This error is particularly troublesome with respect to Plaintiff's complaints about the side effects of her medications, given the following exchange that took place between the ALJ, Plaintiff, and Plaintiff's counsel at the hearing:

> Q (ALJ): .... So let me just comment as to something that I observed and so it will be on the record . . . and that is when I was giving you the oath you kind of appeared like you were too weak and tired to raise your right arm.
>
> A (Plaintiff): That's true.
>
> Q: Is that the case?
>
> A: Yes, with my medication it has me like this.
>
> Q: What medication are you taking that, that is causing that?
>
> A: All of this that the doctor gave me. I don't know how to pronounce but –
>
> . . . .
>
> Q: Well, who's the doctor that gave you the medication?
>
> A: Dr. Herbert, Jennifer Herbert and then I have one from a Dr. Vicker. Another one from Dr. Jennifer Herbert. Another one from Dr. Jennifer Herbert.

---

[4]The Court is aware that the ALJ noted Plaintiff's history of non-compliance with medication in discrediting her complaints, R. 19, and that such evidence may be used as a factor in assessing Plaintiff's credibility. See Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (*per curiam*). While the April 2007 records the ALJ cites in support of this assertion do note a history of non-compliance, those same records go on to indicate Plaintiff was following up "after initiating physical therapy and staying on the medications that we previously put her on . . . ." R. 405. Once again, the ALJ mischaracterizes the content of Plaintiff's medical records, which actually demonstrate that Plaintiff was more recently complying with her medication regimen.

10

| | |
|---|---|
| Q: | And, and, and these medications - |
| A: | Have me like - |
| Q: | - you think are causing that? |
| A: | They have me drowsy and sleepy all day and - |
| Q: | All day. |
| A: | - they know this. |
| Q: | But so drowsy that you're not able to raise your right arm? |
| A: | That's correct. |
| Q: | Okay. Because that's pretty extreme. |
| A: | Yes, it makes - |
| Q: | And have you, have you talked to your doctors about - |
| A: | Yes. |
| Q: | - that kind of side effects? |
| A: | Yes, and they lowered the doses as much as they could. |
| Q: | All right. And it's still like that? |
| A: | And it's still like that. |
| Q: | And when, when was it that you last talked to your doctor about that? |
| A: | On March 3rd. |

. . . .

| | |
|---|---|
| ATTY: | And, Your Honor, this is a list of - |
| ALJ: | Yeah, I understand what she's thinking. I mean I'm not a doctor, but I mean I, I think you would agree with me that |

11

|||such profound weakness that she can't sit there and raise her right [arm] is pretty extreme.

ATTY: Yes, sir.

ALJ: As a matter of a fact, if that's the case, it's disabling, isn't it?

ATTY: Yes sir.

. . . .

ALJ: I'm not judging at this moment whether she can or can't. I'm just trying to say that, wow, she's told me she can't raise her right arm and if there was something in the record that said, I'm a doctor and she can't raise her right arm, I'd send you home.

ATTY: Yes, sir.

. . . .

ATTY: . . . . I can honestly say each time she comes to my office this is basically how she appears unless she doesn't take any of her medications.

R. 416-19.

As this exchange makes clear, the ALJ was aware of what he described as the potentially "extreme" nature of Plaintiff's complaints that her medications were making her drowsy and sleepy all day and, in fact, took the time at the hearing to discuss this issue at length when he observed that Plaintiff appeared to be too tired and weak to raise her right arm. However, in his opinion, the ALJ does not follow up on his comments made at the hearing or otherwise adequately articulate his reasons for discrediting Plaintiff's testimony or her complaints in 2007 about the side effects of her medications. As discussed above, the ALJ also failed to adequately articulate his reasons for discrediting Plaintiff's complaints of disabling pain. Indeed, the ALJ mischaracterizes the content of Plaintiff's medical records

12

in discrediting her complaints of pain, and the records he relies on in discrediting Plaintiff's complaints of drowsiness and weakness pre-date those complaints by at least two years. While the Court makes no findings as to the credibility of Plaintiff's complaints of disabling pain and her "extreme" drowsiness, the ALJ's failure to adequately articulate his reasons for discrediting these complaints warrants a sentence four remand. On remand, the ALJ should make explicit findings in this regard and properly evaluate Plaintiff's complaints of pain and side effects of her medications under the Holt standard.

While the Court has determined that a remand is warranted based on the ALJ's failure to adequately articulate his reasons for discrediting Plaintiff's complaints of pain and other subjective symptoms, the Court takes this opportunity to briefly comment on some of the other issues Plaintiff raises in her brief which are relevant to the other issues discussed herein and the ALJ's obligations on remand. To begin, the Court notes Plaintiff's argument that the ALJ erred in relying on "hearsay statements" from Dr. Sperr's 2004 report in making various findings. (Pl.'s Br., p. 1). As noted above, the Court has found the ALJ's reliance on this report is insufficient to support his conclusion for discrediting Plaintiff's testimony because it was submitted in November 2004, over two years before Plaintiff began reporting symptoms of drowsiness to her doctors. That said, the ALJ is not prohibited from considering hearsay statements contained in reports and medical records, as administrative hearings are not governed by the rules of evidence. Indeed, Congress has specifically provided that "[e]vidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure,"

13

42 U.S.C. § 405(b)(1), and once admitted, such hearsay statements contained in physician's reports may constitute substantial evidence, see Richardson, 402 U.S. at 402-06.

As to Plaintiff's argument that the ALJ failed to consider the side effects of Plaintiff's medications, the Court notes that the ALJ did consider Plaintiff's testimony in this regard and rejected it, but as discussed extensively above, he failed to adequately articulate his reasons for doing so.[5] Given that the side effects of Plaintiff's medications will be an issue on remand, the Court reminds the ALJ of his duty to develop fully the record and make findings about the effect of prescribed medication on a claimant's ability to work. Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981); see also Lacy v. Barnhart, 309 F. Supp.2d 1345, 1352 (N.D. Ala. 2004) (reversing denial of benefits where, *inter alia*, ALJ "failed to consider the effects of the side effects of plaintiff's medication"). To that end, the Court notes that the ALJ has a basic obligation to develop a full and fair record, even if the claimant is represented by counsel. Cowart, 662 F.2d at 735; see also Miles v. Chater, 84 F.3d 1397, 1401 (11th Cir. 1996) (*per curiam*) (stating that ALJ is "duty-bound to develop a full and fair record").

Finally, while Plaintiff argues in her brief that the ALJ refused to allow Plaintiff's son to testify as a witness (Pl's Br., pp. 21-23), a review of the record reveals otherwise. At the conclusion of the hearing, Plaintiff's counsel brought to the ALJ's attention that Plaintiff's son was prepared to testify. R. 444. In response, the ALJ stated that he would "accept as a proffer of proof that her son observes her doing very little or nothing in her activities of daily

---

[5]The Court also notes that the Commissioner did not address this issue in his brief submitted to the Court.

living. . . . If that's all that you're trying to have him say[,] I'll accept that." Id. Plaintiff's counsel agreed that this would be acceptable and that the record could be closed. R. 444-45. As this exchange demonstrates, the ALJ did not refuse to allow Plaintiff's son to testify but accepted as "proffer of proof" his observations of Plaintiff's pain and limited activities of daily living, and this argument is without merit.

### IV. CONCLUSION

For the reasons set forth above, the Court finds that the ALJ did not adequately articulate his reasons for discrediting Plaintiff's complaints of disabling pain and the side effects of her medications. Therefore, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 31st day of July, 2009, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

15